UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

PEDRO MORALES,                          :
     Plaintiff,                      :
                                     :
v.                                      :          3:18cv2098 (MPS)
                                     :
JAMES SCIASCIA,                         :
     Defendants.                     :

**<u>RULING ON MOTION FOR SUMMARY JUDGMENT</u>**

On December 20, 2018, the plaintiff, Pedro Morales, a *pro se* sentenced inmate[1]

currently confined at the Garner Correctional Institution ("Garner") in Newtown, Connecticut,

brought a civil rights action under 42 U.S.C. § 1983 against four Connecticut Department of

Correction ("DOC") officials: William Lefebure, Edward Maldonado, District Administrator

Edward Maldonado, Disciplinary Investigator James Sciascia, and Warden Corcella. Compl.

(ECF No. 1) ¶ 1. His complaint alleged claims that the defendants' handling of a disciplinary

charge and his placement in segregation violated his Eighth Amendment protection against cruel

and unusual punishment and his Fourteenth Amendment right to due process. Compl. ¶¶ 1, 15-

16. He also asserted state law claims of negligence, intentional infliction of emotional distress,

assault, and battery. *Id.* at ¶¶ 6, 20. He requested damages and injunctive relief (including single

cell status, dismissal of his disciplinary report, restoration of his contact visits, restoration of

"good time" credits, and dismissal of his disciplinary report") against the Defendants in their

individual and official capacities. *Id.* at ¶ 21.

---

[1] The Connecticut DOC website shows that Morales has a latest admission date of November 12, 2014 and was sentenced to nineteen years of incarceration on December 10, 2015. *See Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (The court may "take judicial notice of relevant matters of public record."). http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=400282

In an initial review order, the court dismissed Morales's Eighth Amendment claim because he had not alleged any inhumane conditions of confinement based on his allegations of being subjected to seven days of segregation, a strip search prior to placement in segregation, or disciplinary sanctions. Initial Review Order (ECF No. 12 at 5-6). The court permitted Morales's Fourteenth Amendment procedural due process claim to proceed against Disciplinary Investigator Sciascia in his individual and official capacities. *Id.* at 8-9. All other defendants and Morales's state law claims were dismissed from this action. *Id.* at 12.

The Defendant Disciplinary Investigator Sciascia has filed a motion for summary judgment, arguing that Morales's Fourteenth Amendment rights were not violated, this action is barred by *Heck v. Humphrey,* 512 U.S. 477, 487 (1994), and that he is entitled to qualified immunity. Mot. for Summary Judg. (ECF No. 37). Morales has filed an opposition to the Defendant's motion for summary judgment (entitled "Motion in Opposition to Defendant's Motion for Summary Judgment). Pl.'s Opp. (ECF No. 61, 61-2). After carefully considering these submissions, the Court GRANTS the motion for summary judgment.

## I.     STANDARD OF REVIEW

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(a), Fed. R. Civ. P.; *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.,* 875 F.3d 107, 113-14 (2d Cir. 2017). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage*, 875 F.3d at 113-14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Which facts are material is determined by the substantive law. *Anderson*, 477 U.S. at 248. "The same standard

applies whether summary judgment is granted on the merits or on an affirmative defense...." *Giordano v. Market Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010).

The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). He cannot "rely on conclusory allegations or unsubstantiated speculation but must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 34 (2d Cir. 2015) (quotation marks and citation omitted). To defeat a motion for summary judgment, the nonmoving party must present such evidence as would allow a jury to find in his favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000). Although the court is required to read a self-represented "party's papers liberally and interpret them to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

## II.    FACTS[2]

At the time relevant to this action, Pedro Morales was an inmate within the custody of the

---

[2]This factual background is taken from Morales's complaint (ECF No. 1), the Defendant's Local Rule 56(a)1 Statement ("Def.'s 56(a)1") (ECF No. 37-8) and attached exhibits (ECF Nos. 37-2 to 37-8, 38); and Morales's Local Rule 56(a)2 statement of facts in opposition thereto (Pl.'s 56(a)2) (ECF No. 61-1) and attached exhibits. (Pl.'s Opp. Ex.) (ECF No. 61-3).

Connecticut DOC residing at Garner. Defs.' 56(a)1 at ¶ 1.

On February 10, 2016, Morales was first admitted to Garner and he received orientation. *Id.* at ¶ 3. On the same date, he was provided a document printed in English for him to sign to confirm he had received several documents including the Inmate Handbook. *Id.* at ¶ 4. Morales initialed several areas indicating he had received or reviewed the material provided, and he signed the document at the bottom. *Id.* at ¶ 5.

At Garner, Morales was assigned to the kitchen. *Id.* at ¶ 2. According to his complaint, Morales does not speak or understand English. Compl. at ¶ 10. However, Morales has taken the initiative to gain assistance when necessary due to a language barrier. Def.'s 56a(a)1 at ¶ 15.

Morales has alleged the following facts in his complaint that are relevant to this motion for summary judgment. On August 8, 2018, at approximately 4:45 a.m., Morales reported to his utility work assignment in the kitchen at Garner. Compl. at ¶ 8. When he arrived, he allegedly decided to move an industrial fan that was blocking his work area. *Id.* He allegedly moved the fan over to its proper location in the dishwashing area and then allegedly began performing his usual work responsibilities. *Id.* at ¶ 9. Later during his shift, Supervisor Lefebure allegedly gathered all inmate employees in the kitchen for an announcement. *Id.* at ¶ 10. Lefebure allegedly yelled out, "[W]ho put the bread tie on the plug, connected to the fan." *Id.* Morales asserts that he had to ask another inmate to translate Lefebure's announcement for him and that he later denied any involvement with any tampering. *Id.*

Shortly after this meeting, Morales was allegedly escorted out of the kitchen handcuffed and placed in segregation. *Id.* at ¶ 11. While Morales was in segregation for several days, Disciplinary Investigator Sciascia came to see him on two occasions and handed him documents

that he allegedly could not understand. *See id.* at ¶¶ 12, 13. Morales asserts that on the fourth day

of his segregation, Sciascia allegedly explained via "hand motions" that if he wanted to leave

segregation, he would have to sign his name on one of the documents. *Id.* at 13. Morales

maintains that he signed the document although he could not understand its content because he

believed it was his only way to leave segregation. *Id.* Morales allegedly later learned the

document was an admission of guilt to tampering with the corded plug that was affixed to the fan

in the dishwasher area of the kitchen. *Id;* Pl.'s Opp. Exs. at 49-51 (disciplinary reports).

After seven days in segregation, Morales was escorted back to his housing unit. *Id.* at ¶

14. As a result of pleading guilty to the disciplinary report, Morales lost his job and sustained

sanctions of the seven days that he spent in segregation, loss of commissary, loss of contact

visits, and forfeiture of Risk Reduction Earned Credit ("RREC"). *Id.*; Pl.'s Opp. Exs. at 54-55.

## III.    DISCUSSION

Morales asserts a claim of Fourteenth Amendment procedural due process violation

against Disciplinary Investigator Sciascia in connection with the disposition of the disciplinary

report. Initial Review Order at 9. Specifically, Morales maintains that Investigator Sciascia did

not fully explain the nature of the charge in terms that he could understand and that he only

signed the report because he did not know that he was making an admission of guilt, and because

Sciascia had told him that signing the report was the only way to leave the segregation unit. *Id.*

The Fourteenth Amendment's Due Process Clause "protects persons against deprivations

of life, liberty, or property." U.S Const. amend. XIV. The Court must analyze a claim of

violation of procedural due process by (1) asking whether there exists a liberty or property

interest of which a person has been deprived, and (2) if so, whether the procedures followed by

the State were constitutionally sufficient. *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*). In the prison context, which involves persons whose liberty interests have already been severely restricted because of their confinement in a prison, a prisoner cannot show a cognizable deprivation of "liberty" unless he can show that he was subject to an "atypical and significant hardship ... in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). As the Second Circuit has explained, courts must examine the actual punishment received, as well as the conditions and duration of the punishment. *See Davis v. Barrett*, 576 F.3d 129, 133–34 (2d Cir. 2009); *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004).

In this court's initial review, the court held that Morales had not plausibly alleged that he was subjected to an "atypical and significant hardship" during his seven days of segregation so as to establish a liberty interest, and that his loss of his work assignment, commissary privileges and contact visits did not amount to a deprivation of liberty under the Fourteenth Amendment. Initial Review Order at 8. However, the court permitted Morales's Fourteenth Amendment procedural due process claim to proceed against Disciplinary Investigator Sciascia on the basis of his allegation that his "good time credits" were affected by the disciplinary finding. *Id.* at 8-9; *see* Compl. at ¶ 14.   The record evidence shows, however, that it was not Morales's good time or good conduct credits that were affected by the disciplinary finding but, instead, his RREC.

"When a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994); *Austin v. Cuomo*, No. 1:20-CV-00893, 2020 WL 7352664, at *5

(W.D.N.Y. Dec. 15, 2020). This is because "Congress has determined that habeas corpus is the appropriate remedy for state prisoners attacking the validity of the fact or length of their confinement, and that specific determination must override the general terms of [section] 1983." *Preiser v. Rodriguez*, 411 U.S. 475, 490 (1973). In *Edwards v. Balisok*, 520 U.S. 641 (1997), the Supreme Court made clear that *Heck*'s favorable termination rule applies to challenges made under Section 1983 to procedures used in prison disciplinary proceedings that deprive a prisoner of "good time" credits. *Id.* at 646 ("The principal procedural defect complained of by respondent would, if established, necessarily imply the invalidity of the deprivation of his good-time credits.").

Here, Morales's Fourteenth Amendment due process claim based on any interest in RREC credits (although, as shown below, he has no liberty interest in RREC credits) would affect the duration of his sentence. *See Green v. Riffo*, No. 3:18-CV-960 (CSH), 2019 WL 2302412, at *9 (D. Conn. May 29, 2019) (noting that "[i]f an inmate earns RREC, the application of RREC to an inmate's sentence affects the overall duration of the inmate's confinement" and that "in general, a claim regarding the length of one's sentence must be brought as a habeas claim"). Morales has not alleged or shown that he has invalidated his conviction from his disciplinary proceedings through a habeas petition or other state court remedy.   Accordingly, Morales's section 1983 due process claim is barred by *Heck*.

Moreover, after review of the evidence and the relevant legal authorities, the court concludes that Morales does not have a liberty interest as necessary to sustain a Fourteenth Amendment procedural due process claim.   As noted, the record evidence shows that Morales

sustained a forfeiture of RREC, not "good conduct" credit, as a result of his guilty plea to the disciplinary report. Pl.'s Opp. Exs. at 54-55.

RREC is governed by Connecticut General Statutes § 18-98e, which provides that an inmate may:

> earn risk reduction credit for adherence to the inmate's offender accountability plan, for participation in eligible programs and activities, and for good conduct and obedience to institutional rules as designated by the commissioner, provided (1) good conduct and obedience to institutional rules alone shall not entitle an inmate to such credit, and (2) the commissioner or the commissioner's designee may, in his or her discretion, cause the loss of all or any portion of such earned risk reduction credit for any act of misconduct or insubordination or refusal to conform to recommended programs or activities or institutional rules occurring at any time during the service of the sentence or for other good cause. If an inmate has not earned sufficient risk reduction credit at the time the commissioner or the commissioner's designee orders the loss of all or a portion of earned credit, such loss shall be deducted from any credit earned by such inmate in the future.

Conn. Gen. Stat. § 18-98e(b).

Morales cannot assert a Fourteenth Amendment claim on the basis of his RREC forfeiture because Connecticut law confers no liberty interest in earned or future risk reduction credit. *Petaway v. Osden*, No. 3:17-CV-00004 (VAB), 2019 WL 1877073, at \*4 (D. Conn. Apr. 26, 2019), *aff'd on other grounds*, 827 F. App'x 150 (2d Cir. 2020) (noting RREC "is discretionary in nature and confers no liberty interest in earned or future risk reduction credit.")[3] ((citing *Green v. Comm'r of Correction*, 184 Conn. App. 76, 86–87, 194 A.3d 857, 864 (2018) ("The fact that the commissioner is vested with such broad discretion in implementing the RREC

---

[3]  By contrast, a prisoner cannot be deprived of previously earned credit under the good conduct credit statute, Connecticut General Statutes § 18-7a, if the prisoner is not offered procedural due process protection. *Jolley v. Commissioner of Correction,* 60 Conn. App. 560, 561 (2000), *cert. denied*, 274 Conn. 913 (2005); *Petaway*, No. 3:17-CV-00004 (VAB), 2019 WL 1877073, at \*4. In this case, the record evidence shows that Morales sustained a forfeiture of RREC, not a loss of good conduct credit, as a result of pleading guilty to the disciplinary report. Pl.'s Opp. Exs. at 54-55.

program is significant. Our appellate courts have concluded, consistently, that an inmate does not

have a constitutionally protected liberty interest in certain benefits—such as good time credits,

risk reduction credits, and early parole consideration—if the statutory scheme pursuant to which

the commissioner is authorized to award those benefits is discretionary in nature.") and *Perez v.*

*Comm'r of Correction*, 326 Conn. 357, 370–72 (2017) ("Although the legislature has provided

guidance to the respondent as to how to exercise his discretion, the respondent still has broad

discretion to award or revoke risk reduction credit. As such, the statute does not support an

expectation that an inmate will automatically earn risk reduction credit or will necessarily retain

such credit once it has been awarded.")); *see also Delgado v. Lieutenant Concepcion*, No. 3:20-

CV-787 (SRU), 2020 WL 7388959, at *7 (D. Conn. Dec. 16, 2020) ("As several courts have

noted, a Connecticut state prisoner has no liberty interest in RREC"); *Whistnant v. Comm'r of

Corr.*, 199 Conn. App. 406, 423–26 (2020) (affirming superior court decision that petitioner had

no vested liberty interest in RREC "'because it could be rescinded by the respondent at any time

in the respondent's discretion for good cause during the petitioner's period of incarceration. ...

Although the legislature has provided guidance to the respondent as to how to exercise his

discretion, the respondent still has broad discretion to award or revoke risk reduction credit.'").

Accordingly, the court will enter summary judgment in favor of Defendant Disciplinary

Investigator Sciascia on Morales's procedural due process claim.

## IV.    CONCLUSION

For the reasons stated above, the Court GRANTS the Defendant's Motion for Summary

Judgment (ECF No. 37). The Clerk is instructed to terminate Morales's "Motion in Opposition to

Defendant's Motion for Summary Judgment," which the Court construes as an opposition memorandum (ECF No. 61).

The clerk is instructed to enter judgment in favor of defendant and to close this case.


_____/s/_____
Michael P. Shea
United States District Judge

**SO ORDERED** this 21st day of January, 2021, at Hartford, Connecticut.